UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RODRICK TREMAINE JACKSON,

    Defendant-Movant,

v.

UNITED STATES OF AMERICA,

    Plaintiff-Respondent.

_____/

Case No. 1:25-cv-1021

Honorable Jane M. Beckering

## **OPINION AND ORDER**

Currently pending before the Court is Defendant-Movant Rodrick Tremaine Jackson ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Defendant's motion is before the Court for preliminary review pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings in the United States District Courts. Under Rule 4(b), a district court is required to summarily dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b), Rules Governing Section 2255 Proceedings. For the reasons set forth below, it is apparent that Defendant is not entitled to relief. Accordingly, Defendant's § 2255 motion will be dismissed.

**I.**    **Background**

On November 10, 2021, a grand jury returned an Indictment charging Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). *See* Indictment, *United States v. Jackson*, No. 1:21-cr-196 (W.D. Mich.) (ECF No. 1.). Ultimately, Defendant entered into a plea agreement in which he agreed to plead guilty to the one-count

Indictment. *See* Plea Agreement, *id.* (ECF No. 74). The plea agreement noted that Defendant's guilty plea was conditional because Defendant was reserving the right to appeal the Court's denial of his motion to suppress evidence. *See id.* (ECF No. 74, PageID.338). The plea agreement also set forth that because Defendant had been previously convicted of three or more violent felonies and/or serious drug offenses, he was subject to enhanced penalties under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). *See id.* (ECF No. 74, PageID.339). Notably, Defendant faced a mandatory minimum of 15 years' incarceration and a maximum of life. *See id.* Defendant appeared before the Court for his change of plea hearing on January 18, 2023. *See* Change of Plea Hr'g Tr., *id.* (ECF No. 79).

On May 31, 2023, the Court sentenced Defendant to 180 months of incarceration, to be followed by five years of supervised release. *See* J., *id.* (ECF No. 92). Defendant appealed to the United States Court of Appeals for the Sixth Circuit. On appeal, Defendant challenged the denial of his motion to suppress and his classification as an armed career criminal under the ACCA. *See* 6th Cir. Op., *id.* (ECF No. 98, PageID.666). On January 13, 2025, the Sixth Circuit rejected Defendant's arguments and affirmed his conviction and sentence. *See id.* Defendant did not petition the United States Supreme Court for a writ of certiorari. The Court received Defendant's § 2255 motion (ECF No. 1) on August 27, 2025.

## II.   Analysis

### A.   Standard of Review

A federal prisoner who moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the movant must demonstrate

"the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

The general rule is that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Claims of ineffective assistance of counsel are an exception to this general rule. Claims of ineffective assistance of counsel "are more properly available in a post-conviction proceeding under 28 U.S.C. § 2255, after the parties have had the opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010) (citation omitted).

**B.    Discussion**

Defendant raises the following two grounds for relief in his § 2255 motion:

I.    Whether the judge committed "plain error" when [s]he used [her] own fact finding instead of the jury to increase a defendant's exposure to punishment.

II.   [Defendant's] 18 U.S.C. § 922(g)(1) conviction is [facially] unconstitutional pursuant to [*New York State Rifle and Pistol Association v.*] *Bruen*[, 597 U.S. 1 (2022)].

(§ 2255 Mot., ECF No. 1, PageID.4–5.)

**1.    Ground I—Sentencing Error Claim**

As his first ground for relief, Defendant contends that the Court committed plain error at sentencing by relying upon judicial fact-finding to increase Defendant's "exposure to punishment." (§ 2255 Mot., ECF No. 1, PageID.4.) Specifically, Defendant takes issue with the Court's conclusion, at sentencing, that Defendant "had committed three prior violent felonies" on different occasions, making him subject to the enhanced penalties under the ACCA. (Br. Supp. § 2255 Mot., ECF No. 2, PageID.16.) Defendant avers that the Court's decision violates *Apprendi*

4

*v. New Jersey*, 530 U.S. 466 (2000), as well as *Erlinger v. United States*, 602 U.S. 821 (2024). (Br. Supp. § 2255 Mot., ECF No. 2, PageID.16.) For the reasons set forth below, Defendant's arguments lack merit.

### a.    *Apprendi* Violation

In *Apprendi*, the Supreme Court held that **"[o]ther than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added); *see also Alleyne v. United States*, 570 U.S. 99, 111 n.1 (2013) ("[W]e [have] recognized a narrow exception to this general rule for the fact of a prior conviction."); *Pereida v. Wilkinson*, 592 U.S. 224, 238 (2021) ("'[T]he fact of a prior conviction' supplies an unusual and 'arguable' exception to the Sixth Amendment rule in criminal cases that 'any fact that increases the penalty for a crime' must be proved to a jury rather than a judge.").

The exception in *Apprendi* for the fact of a prior conviction dates back to the decision by the Supreme Court in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *United States v. Burgin*, 388 F.3d 177, 183 (6th Cir. 2004). The *Burgin* court explained:

> [In *Almendarez-Torres*] the Court held that subsection (b)(2) of 8 U.S.C. § 1326 did not define a separate crime. Rather, it constituted a penalty provision, pursuant to which a court could increase a sentence of imprisonment on the basis of an earlier criminal conviction. . . .
>
> In determining that Congress only "intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense," 523 U.S. at 235, the Supreme Court noted, among other things, that "the relevant statutory subject matter is recidivism," *id*. at 230, and recidivism "the prior commission of a serious crime-is as typical a sentencing factor as one might imagine," *id*. Recidivism, the Court said, is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id*. at 243. Thus, "to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'go[ing] to the punishment only.'" *Id*. at 244 (quoting *Graham v. West Virginia*, 224 U.S. 616, 629 (1912)).

388 F.3d at 183 (parallel citations omitted).

In light of the foregoing, the Court did not violate *Apprendi* by using Defendant's prior criminal history to enhance his sentencing exposure. Defendant, therefore, is not entitled to relief with respect to this portion of ground I.

### b. *Erlinger* Violation

The ACCA provides that the three previous convictions used as predicate offenses for purposes of applying the ACCA's enhanced penalties must have been "committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1). In 2022, the Supreme Court granted certiorari to resolve a circuit split regarding the meaning of the ACCA's "occasions" clause. *See Wooden v. United States*, 595 U.S. 360, 365 (2022). The *Wooden* Court concluded that the inquiry regarding whether the predicate offenses occurred on different occasions is "multi-factored in nature." *See id.* at 369. Notably, the Court stated:

> Timing of course matters, though not in the split-second, elements-based way the Government proposes. Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion; not so offenses separated by substantial gaps in time or significant intervening events. Proximity of location is also important; the further away crimes take place, the less likely they are components of the same criminal event. And the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion.

*Id.* After considering those factors, the Court concluded that Wooden, who had burglarized ten storage units at one storage facility on a single occasion and who pleaded guilty to ten burglary counts, had not committed his offenses on separate occasions and, therefore, was not subject to enhanced sentencing under the ACCA. *Id.* at 375.

Two years later, the Supreme Court revisited the ACCA's "occasions" clause to determine "whether a judge may decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard, or whether the Fifth and Sixth

Amendments require a unanimous jury to make that determination beyond a reasonable doubt." *Erlinger*, 602 U.S. at 825. The Court agreed with Erlinger, concluding that he "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Id.* at 835. Thus, after *Erlinger*, a defendant subject to the sentencing enhancements set forth in the ACCA is now entitled to a jury determination concerning whether their prior qualifying felonies occurred on separate occasions.

New rules announced by the Supreme Court apply "only in limited circumstances" to "convictions that are already final." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004). First, substantive rules generally apply retroactively. *See id.* New substantive rules "include 'rules forbidding criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery v. Louisiana*, 577 U.S. 190, 198 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). In *Montgomery*, the Court defined substantive rules as those that "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Id.* at 201. For example, in *Montgomery*, the Supreme Court concluded that the new rule announced in *Miller v. Alabama*—prohibition on imposing mandatory life without parole for juvenile offenders—was a new substantive rule that applied retroactively to cases on collateral review. *Id.* at 206.

New procedural rules, however, "generally do not apply retroactively." *Schriro*, 542 U.S. at 352. New procedural rules include those rules "that regulate only the *manner of determining* the defendant's culpability." *Id.* at 353 (emphasis in original). The Supreme Court has noted that it "give[s] retroactive effect to only a small set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle v. Parks*,

7

494 U.S. 484, 495 (1990)); *see also Teague v. Lane*, 489 U.S. 288, 311 (1989)). It is not enough that a new procedural rule be "fundamental"; "the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished." *Id.* (quoting *Teague*, 489 U.S. at 313).

In light of the foregoing, the Court concludes that the rule announced in *Erlinger* does not amount to a new substantive rule, as the *Erlinger* decision did not "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, 577 U.S. at 201. Instead, the rule announced in *Erlinger* only alters "the manner of determining the defendant's culpability." *Edwards v. Vannoy*, 593 U.S. 255, 276 (2021); *see also Erlinger*, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising [*Erlinger*'s] new rule in collateral proceedings.").

Moreover, the Court cannot conclude that the rule announced in *Erlinger* amounts to a "watershed rule of criminal procedure" that should be given retroactive effect to cases on collateral review. Notably, the Supreme Court "has identified only one pre-*Teague* procedural rule as watershed: the right to counsel recognized in the Court's landmark decision in *Gideon v. Wainwright*, 372 U.S. 335 . . . (1963)." *Vannoy*, 593 U.S. at 267. The *Vannoy* Court noted that it "has never identified any other pre-*Teague* or post-*Teague* rule as watershed. None." *Id.* The majority noted that if "landmark and historical criminal procedure decisions" do not apply retroactively on collateral review, the Court could not "responsibly continue to suggest" to litigants and other courts that any "new rules of criminal procedure can satisfy the watershed exception." *Id.* at 271. The Court forcefully stated: "It is time—probably long past time—to make explicit what has become increasingly apparent to bench and bar over the last 32 years: New procedural rules do not apply retroactively on federal collateral review. The watershed exception is moribund.

8

It must 'be regarded as retaining no vitality.'" *Id.* at 272 (quoting *Herrera v. Wyoming*, 587 U.S. 329, 342 (2019)).

In light of the Supreme Court's dicta in *Vannoy*, this Court agrees with the other courts that have concluded that *Erlinger* did not announce a new rule that is retroactively applicable on collateral review. *See, e.g.*, *Johnson v. United States*, No. 1:25-cv-831, 2025 WL 731966, at *10–11 (W.D. Mich. Mar. 7, 2025) (collecting cases). Instead, the rule announced in *Erlinger* "merely 'allocate[d] decision making authority' by requiring a jury rather than a judge' to make certain factual determinations." *Ursery*, 2024 WL 4652209, at *4 (quoting *Duncan v. United States*, 553 F.3d 442, 447 (6th Cir. 2009). As the Sixth Circuit noted in *Duncan*, courts have not made any indication that "juries [are] so much more accurate than judges such that the change brought about by [*Erlinger*'s new rule] 'implicate[s] the fundamental fairness and accuracy of the criminal proceeding.'" *Duncan*, 553 F.3d at 447 (quoting *Schriro*, 542 U.S. at 353).

In any event, regardless of *Erlinger*'s retroactivity, the claimed error by Defendant is harmless. *See United States v. Campbell*, 122 F.4th 624, 630 (6th Cir. 2024) (noting that courts can find *Erlinger* errors harmless). The Court deemed Defendant to be an armed career criminal because of the following prior convictions: (1) a November 17, 2005, guilty plea to delivery/manufacturing less than 50 grams of a controlled substance, for which Defendant was charged after being arrested on April 6, 2005; (2) assault with intent to do great bodily harm less than murder stemming from Defendant's arrest on August 26, 2005; and (3) a September 3, 2013, guilty plea to assault with great bodily harm less than murder stemming from Defendant's arrest on April 12, 2012. *See* PSR, *United States v. Jackson*, No. 1:21-cr-196 (W.D. Mich.) (ECF No. 84, PageID.416–418). Those convictions occurred on separate dates; accordingly, "reasonable jurists would agree that [Defendant's] sentence would not have been different had a jury decided

9

whether his ACCA-qualifying offenses were committed on different occasions." *See Kaiser v. United States*, No. 25-1133, 2025 WL 2306733, at *2 (6th Cir. June 27, 2025).

In light of the foregoing, this Court concludes that while *Erlinger* announced a new rule, this new rule does not apply retroactively to cases on collateral review. Moreover, regardless of *Erlinger*'s retroactivity, any claimed *Erlinger* error is harmless. Defendant, therefore, is not entitled to relief with respect to this portion of ground I.

### c. Summary

In sum, neither *Apprendi* nor *Erlinger* provide Defendant any basis for relief, and his argument that the Court committed plain error at sentencing lacks merit. Accordingly, Defendant is not entitled to relief with respect to ground I.

### 2. Ground II—*Bruen* Claim

As his second ground for relief, Defendant contends that his conviction under § 922(g)(1) is now facially unconstitutional pursuant to the Supreme Court's 2022 decision in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022). (§ 2255 Mot., ECF No. 1, PageID.5.)

In 2008, the Supreme Court held that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The Court, however, cautioned that "the right secured by the Second Amendment is not unlimited." *Id.* The *Heller* Court explicitly stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* In 2010, the Court affirmed that statement. *See McDonald v. Chicago*, 561 U.S. 742, 786 (2010). Specifically, a plurality of the Court stated: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626). After *Heller* and *Chicago*, the United States Court of Appeals for the

10

Sixth Circuit "repeatedly found that 'prohibitions on felon possession of firearms do not violate the Second Amendment.'" *United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022).

Shortly after *Goolsby*, the Supreme Court decided *Bruen*. In *Bruen*, the Court held that "consistent with *Heller* and *McDonald*, . . . the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10. The Court concluded that New York's licensing scheme for issuing public-carry licenses for self-defense violated the Constitution because licenses issued "only when an applicant demonstrates a special need for self-defense." *Id.* at 11. In so concluding, the Court stated:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17. The government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. That burden requires the government to point to "'historical precedent' from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *Id.* at 27.

The *Bruen* Court, however, did reiterate that "the right secured by the Second Amendment is not unlimited." *Id.* at 21 (quoting *Heller*, 554 U.S. at 626). In concurrences, Chief Justice Roberts and Justices Alito and Kavanaugh specifically noted that the Court's holding in *Bruen* "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *See id.* at 72 (Alito, J., concurring), *see also id.* at 81 (Kavanaugh, J., concurring). The dissenting justices—Justices Breyer, Kagan, and Sotomayor—also understood the *Bruen*

11

majority's opinion "to cast no doubt" on *Heller*'s treatment of laws prohibiting the possession of firearms by felons. *See id.* at 129 (Breyer, J., dissenting).

In March of 2024, the Sixth Circuit acknowledged that following *Bruen*, there is a circuit split regarding the constitutionality of felon-in-possession convictions under § 922(g)(1). *See United States v. Johnson*, 95 F.4th 404, 416 (6th Cir. 2024). In 2023, the Eighth Circuit held that such convictions do not violate the Second Amendment, writing that "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023). That same year, the Third Circuit sustained a challenge to § 922(g)(1) by a prospective firearm owner who had previously been convicted of making a false statement to obtain federal food stamps. *See Range v. Att'y Gen.*, 60 F.4th 96, 106 (3d Cir. 2023) (en banc). Moreover, the Fifth Circuit sustained a challenge to § 922(g)(1) by an individual who was an unlawful user of a controlled substance. *See United States v. Daniels*, 77 F.4th 337, 355 (5th Cir. 2023).

In *Johnson*, the Sixth Circuit noted that several courts had rejected similar § 922(g)(1) challenges under plain error review. *See Johnson*, 69 F.4th at 416–17 (collecting cases). The *Johnson* court rejected a similar challenge, noting the absence of "precedent explicitly holding that § 922(g)(1) is unconstitutional and because it is unclear that *Bruen* dictates such a result." *Id.* at 417. Subsequently, the Sixth Circuit has twice rejected identical challenges. *See United States v. v. Alvarado*, 95 F.4th 1047, 1053 (6th Cir. 2024); *United States v. Trammell*, No. 23-5221, 2024 WL 3163403, at *5 (6th Cir. June 25, 2024).

The Sixth Circuit has also stated that "we unambiguously held in *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that remains the binding law in this circuit." *United States v. Vaughn*, No. 23-

5790, 2023 WL 9789018, at *1 (6th Cir. Sept. 28, 2023). Since *Bruen*, several courts within the Sixth Circuit have rejected § 2255 motions raising the same argument that Defendant raises now. *See, e.g.*, *Thomas v. United States*, No. 2:24-cv-126, 2024 WL 4511426, at *3 (W.D. Mich. Oct. 17, 2024) (collecting cases).

Moreover, on August 23, 2024, the Sixth Circuit issued a precedential opinion addressing the constitutionality of § 922(g). *See United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). The panel first noted that *Carey* was no longer good law because "the Supreme Court's mode of analysis ha[d] changed since [the Sixth Circuit] last upheld § 922(g)(1)'s constitutionality." *Id.* at 645. The Sixth Circuit noted that, under *Bruen*, the first step is to "ask whether 'the Second Amendment's plain text covers [the defendant's] conduct." *Id.* at 648 (quoting *Bruen*, 597 U.S. at 24). Ultimately, the panel concluded that the phrase "the people," as used in the Second Amendment, encompassed all citizens, including felons. *Id.* at 649. Thus, "[o]n balance, the Second Amendment's plain text presumptively protects William's conduct." *Id.*

The Sixth Circuit then proceeded to the second step under *Bruen*—determining whether the government's burden imposed on the Second Amendment right was "consistent with the principles of underpinning our historical tradition of regulating firearms." *Id.* at 650. The panel conducted an exhaustive review of pre-Colonial, Colonial, and post-Colonial history regarding the regulation of firearms and concluded that the burden imposed by § 922(g)(1) was consistent with that history. *See id.* at 650–57. The panel stated that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* at 657. Thus, § 922(g)(1) is "constitutional as it applies to dangerous individuals," *i.e.*, constitutional on its face. *Id.* at 662.

The Sixth Circuit's decision, however, left open the possibility of as-applied challenges to § 922(g)(1). The court concluded that "when the legislature disarms on a class-wide basis,

13

individuals must have a reasonable opportunity to prove that they don't fit in the class-wide generalization." *Id.* at 661. The panel set forth the following guidance to determine whether an individual is dangerous:

> A person convicted of a crime is "dangerous," and can thus be disarmed, if he has committed (1) a crime "against the body of another human being," including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary. An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous.
>
> A more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements. But such a case is not before us today.

*Id.* at 663. Applying that guidance, the Sixth Circuit concluded that Williams' as-applied challenge failed, as his prior convictions for aggravated robbery and attempted murder clearly indicated his dangerousness. *Id.* at 662.

Given the extensive authority set forth above, Defendant's facial challenge to § 922(g)(1) fails. Moreover, any intended as-applied challenge also fails. Defendant's Presentence Investigation Report (PSR) indicates that Defendant has previously been convicted of two counts of assault with intent to harm less than murder, two controlled substances offenses, and three firearms offenses in the Michigan state courts. *See* PSR, *United States v. Jackson*, No. 1:21-cr-196 (W.D. Mich.) (ECF No. 84, PageID.411–412). Under *Williams*, those convictions certainly qualify Defendant as a "dangerous" individual who can be disarmed. *See Williams*, 113 F.4th at 663.

For the foregoing reasons, Defendant is not entitled to relief on ground II.

C. **Evidentiary Hearing**

Section 2255 provides that a court is generally required to hold an evidentiary hearing to make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). No

evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Having decided that the files and records in this case conclusively show that Defendant is not entitled to relief under 28 U.S.C. § 2255, no evidentiary hearing is required to resolve the merits of the pending motion.

### III.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claim under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate Judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).


Dated:     September 26, 2025                       /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge